Marshall, C. J.
The motion for a rehearing filed with the commission, and the petition in error -filed in this court, make the same assignments of error, and, while they are twelve in number, they may be reduced to four general grounds:
1. Proper notice was not served.
2. The finding and order in favor of the applicant, The Ohio Fuel Supply Company, are against the weight of the evidence.
3. The commission erred in dismissing The East Ohio Gas Company from the case.
4. The finding and order are contrary to law.
*579 We will consider these assignments in the order above named.
Section 544, General Code, provides that a final order of the commission shall be reversed, vacated or modified by the supreme court on petition in error, if the court is of the opinion that such order was unlawful and unreasonable. Section 545, General Code, seems to authorize an inquiry into any errors complained of during the proceedings before the commission. In determining whether any order of the commission is unlawful and unreasonable, inquiry should therefore be made, not only into the evidence, to determine whether the order is properly supported by the evidence, but also into the proceedings during the course of the hearing, to determine whether the statutes relative to procedure have been followed and whether the law applicable to the proceeding has been properly applied. Following this rule, we will first determine whether a proper notice was served.
To determine this question and other questions which follow requires an examination of Section 504-3, General Code, this being the particular section which provides the manner and means whereby a public utility may withdraw or close its service. We will quote only the portions applicable to and controlling this proceeding:
“Any * * * such public utility * * * desiring to abandon or close * * * for traffic or service all or any part of such line or lines, pumping station, generating plant, power station or service station, shall first make application to the public utilities commission in writing who shall thereupon *580 cause reasonable notice thereof to be given, stating the time and place fixed by the commission for the hearing of said application. Upon the hearing of said application said commission shall ascertain the facts, and make its finding thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal or closing for traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, they may allow the same; otherwise it shall be denied * * * No application shall be granted unless the company or public utility shall have operated said * * * gas line * * * for a period of at least five years, and such notice shall be given by publication in a newspaper of general circulation throughout any county or municipality which may have granted a franchise to said company or public utility, under which said * * * gas line * * * or service station is operated or in which the same is located, once a week for four consecutive weeks before the hearing of said application, and notice of said hearing shall be given such county, municipality or public utility in the manner provided for the service of orders of the commission in section 614-71 of the General Code, and except that the provisions of section 504-2 and 504-3 shall not apply to a gas company when removing or exchanging abandoned field lines.”
It will be.observed that this section does not require a village or county or any consumers to be made parties defendant to the proceeding, but only that the application shall be addressed to the Public Utilities Commission and that notice thereof be *581 given. Later in the section it is provided that “such notice” shall be by publication in a newspaper, which shall have circulation throughout the county or municipality which may have granted a franchise and in which the service is being rendered. In the instant case the newspaper publication is in the following language:
“Legal Notice
“The application of The Ohio Fuel Supply Company, before the Public Utilities Commission of Ohio, filed April 8th, 1920, and being cause No. 1970, for leave to withdraw the natural gas service, pipes, lines, meters and other facilities for service, from the municipality of St. Clairsville, the unincorporated village of East Richland, and rural consumers served in connection therewith, all in Belmont county, Ohio, by order of the Commission has been assigned for hearing on Friday, May 14th, 1920, at 9 o’clock A. M., Central Standard time, at the Hearing Room of the Commission in the State Office Building, Columbus, Ohio.
“This publication made pursuant to an order of The Public Utilities Commission of Ohio as provided by law.
“The Ohio Fuel Supply Company,
“(4 15 4) “By J. M. Garard,

“Vice-President and General Manager.”

The record further discloses that notice 'was given to the village solicitor of St. Clairsville, to the prosecuting attorney of Belmont county, and to *582 The East Ohio Gas Company, of the time and place of hearing, in the usual manner provided in Section 614-71, General Code. No motion to quash service was made by any party to the proceeding, and no specific complaint was ever made to the manner of serving any notices, or to the form or substance of the publication' above quoted, but on the contrary the only objection which has ever been made was an oral claim of insufficiency of notice, made at the time of the hearing.
We are not sure that we fully understand the' views of counsel on this point, but we gather from the colloquy between the commission and counsel that it was the view of counsel that notice should be served upon each and every consumer of gas in the Village of St. Clairsv-ille and Belmont county. Even if this should be a correct statement of the law, it does not appear that the requisite notice has not been given, because Section 504-3 makes no mention of personal service, and, for anything which appears in that section, service by publication is all that the legislature required or intended. Furthermore, the Village of St. Clairsville filed an answer, and the village solicitor and the prosecuting attorney of Belmont county, and other counsel representing “various protestants,” appeared and participated in the hearing. Inasmuch as it does not appear that there were any contracts between the utility and the consumers, and inasmuch as it does appear that there was a franchise granted by the village to the utility, it would seem that actual notice to the village and published notice to the consumers should be sufficient.
*583 Let us next inquire whether the finding and order are against the weight of the evidence. On this point the inquiry should not be to determine whether there is. a scintilla of evidence to support the finding of the commission, but, on the contrary, we are of the opinion that this court should examine the record with a view of determining whether the findings of the commission on the facts are reasonably supported by the evidence adduced at the hearing. Inasmuch as this is the first review of the evidence, the situation of this court in such matters is analogous to that of' the court of appeals in weighing and reviewing the evidence in an error proceeding from the court of common pleas. Applying such analogy, the findings of the commission should not be disturbed unless they are so manifestly against the weight of the evidence, and so clearly unsupported by it, as to show misapprehension, or mistake, or wilful disregard of duty. This court has not had the opportunity of observing the demeanor of the witnesses, and is therefore not as competent to weigh the evidence as the commission should be, but it is only proper to state that we have carefully read the entire record and are of the opinion that the finding of the commission is not only fairly supported by the evidence, but are further of the opinion that it is difficult to find any evidence in the record upon which the commission could have based any different finding. The commission has based its finding solely upon “the inability of The Ohio Fuel Supply Company longer to secure gas with which to supply consumers in these villages.” It is true that the cross-examination of the witnesses *584 produced by the gas company shows that The Ohio Fuel Supply Company has many thousands of acres of lands under lease in Belmont county, but the testimony further shows that there has been a number of wells drilled upon those leases and that the tests made by the drill fairly served to condemn the leases. While it is possible that there might be procured a small supply of gas, it does not appear that it was probable or even possible to produce an-amount sufficient for the supply of the Village of St. Clairsville, or, if possible to supply the village for a short time, it would necessarily be only a short time. The evidence further indicates that the cost of piping such limited supply to St. Clairsville would be out of all proportion to the benefits to be obtained.
Let us next inquire whether the commission erred in dismissing The East Ohio Gas Company from the case. It must be borne in mind that The East Ohio Gas Company did not voluntarily enter its appearance ; that it was not at any time asking for any affirmative relief, except that at the hearing it was stated by counsel that in the event the commission should hold that it had jurisdiction to make an order affecting The East Ohio Gas Company, it was, in such event, desired to amend the prayer of its pleading and to pray authority to discontinue the supply of gas to The Ohio Fuel Supply Company. The commission did not at any time hold that it had jurisdiction, but on the contrary dismissed The East Ohio Gas Company, apparently on the ground that it did not have jurisdiction. Let us suppose, however, that the commission did have jurisdiction and that The East Ohio Gas Company was a neces *585 sary party to the full determination of this controversy. It is evident that the commission must have reached the conclusion that it had no power to compel The East Ohio Gas Company to continue to supply gas to The Ohio Fuel Supply Company and did not have the right to compel that company to enter into a new contract for such purpose. If the commission did not have jurisdiction over The East Ohio Gas Company, it was right in dismissing that company from the case. If it did have jurisdiction, it had the right to determine whether it could compel The East Ohio Gas Company to continue to furnish gas to The Ohio Fuel Supply Company, and if it did in fact decide that it could not compel it to do so the only thing left to be done was to dismiss The East Ohio Gas Company from the case.
It was not claimed that there was any privity of contract between the Village of St. Clairsville and The East Ohio Gas Company. Its liability to furnish gas is sought to be shown in various roundabout ways. In the first instance, it is shown that in its original articles of incorporation, and in each amendment thereto, it was given power and authority to supply natural gas to St. Clairsville arid other cities and villages. It does not appear, however, that it ever procured any-franchise from the Village of St. Clairsville, or that any rate was ever established in favor of that company, or that that company ever filed any acceptance of any such franchise or rate. It is impossible, therefore, that there could be any contractual relation existing between the village and The East Ohio Gas Company which would become the basis of any obligation to *586 furnish gas. The existence of corporate power is one thing. The exercise of that power is quite another thing. The power was in a measure granted by the secretary of state in approving the articles of incorporation. But even this power was not complete as to the use of the streets and alleys of St. Clairsville without a franchise being granted by the village council. A valid contract between a municipality and a utility is usually brought about by adoption by the municipality of a franchise and rate ordinance and a written acceptance thereof by the utility. This is the plan outlined by statute and is the plan which was in fact followed in creating the contractual relation between the Village of St. Clairsville and The Ohio Fuel Supply Company. Such a contract must necessarily depend upon the terms of the ordinance and the character of its acceptance. Inasmuch as no such steps were taken, it follows that there was no direct obligation created by the articles of incorporation of The East Ohio Gas Company, or the amendments thereto.
Let us next determine whether the contract between The Ohio Fuel Supply Company and The East Ohio Gas Company created an obligation which would accrue to the Village of St. Clairsville and which could -be enforced in any proceeding either before the commission or in a court of law or equity. There are certain lines of cases which hold that a promise to one on a sufficient consideration to pay another can be enforced by the latter in his own name. Even if it should be held that the doctrine declared in those cases is applicable to the contract between The Ohio Fuel Supply Company and *587 The East Ohio Gas Company, the doctrine certainly could not be stretched to make the contract enforceable beyond the obligations expressed in the contract. The contract provided that gas should be supplied for the period of one year from October 22, 1909, and thereafter indefinitely, subject to cancellation by either party on six-months’ written notice. If, immediately after the signing of this contract, The East Ohio Gas Company had refused to furnish any gas, even for the period of one year, or if it should refuse to furnish gas until the expiration of the period of six months after written notice given, a different situation would be presented, which we are .not called upon to decide at this time.
Let us next inquire whether any obligation rests upon The East Ohio Gas Company to supply gas to The Ohio Fuel Supply Company for the uses of the Village of St. Clairsville upon any other grounds. This question is more properly discussed in connection with the fourth branch of our inquiry, to-wit, whether the finding and order of the commission are contrary to law. We have already determined that The Ohio Fuel Supply Company does not have an adequate available supply of natural gas of its own production for the uses of the Village of St. Clairsville, having due regard to “the cost of operating the service or facility,” and no means of obtaining such supply except from The East Ohio Gas Company, and we have already determined that there is no contract obligation express or implied on the part of The East Ohio Gas Company to continue to furnish a supply to The Ohio Fuel Supply Company.
*588 It is contended by the Village of St. Clairsville that Section 614-12, General Code, applies and that by virtue of its provisions both The Ohio Fuel Supply Company and The East Ohio Gas Company can be ordered and directed to continue the supply of natural gas. That section provides that “Every public utility shall furnish necessary and. adequate service and facilities which shall be reasonable and just, and every unjust or unreasonable charge for such service is prohibited and declared to be unlawful.” It is apparent that that section only applies where it is admitted that there is a duty to serve and where the complaint is directed either to the adequacy of the service or to the unreasonableness or unjustness of the facilities. Manifestly it can have no application to the present inquiry, which is concerned only with the right to terminate the duty, thereby putting an end to the service entirely. In the case of East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33, we quote from the opinion at page 57 as follows: “The entire abandonment of its franchise in Akron and seeking its fortunes elsewhere within the charter limits, do not constitute unlawful discrimination as generally understood.”
Section 614-44 is also relied upon by the Village of St. Clairsville, but that section only refers to the power of the municipality to fix a rate, and it is apparent that the provisions of that section presuppose a duty to supply the service or furnish the commodity. That section is also impotent, unless there is a valid obligation to furnish some service or commodity to which a rate can be made to apply. It is conceded by both sides that prior to the enact *589 ment of Séction 504-3, General Code, such utility might voluntarily forfeit its right to exercise its privileges and withdraw therefrom, and that authority for such view is found in the cases of East Ohio Gas Co. v. City of Akron, supra, and Village of Newcomerstown v. Consolidated Gas Co., 100 Ohio St., 494. It is, however, contended on the part of the village that those decisions no longer have any force or effect and that the doctrines therein promulgated have been annulled by the provisions of Section 504-3, General Code, and that since such enactment the question of the right to withdraw service must be submitted to the commission for determination. This view is undoubtedly correct, but it is not important in the instant case because there has been no disposition to evade the aúthority of the commission. On the contrary, the jurisdiction of the commission has been invoked, and the real inquiry is as to the scope of its powers under Section 504-3, General Code.
On the part of the village it is contended that the state in the exercise of its police power may control the service rendered and to be rendered by a public utility, regardless of whether there is a contractual obligation to do so, and may compel a continuance of service after the obligation has terminated. We have examined the cases cited in support of this contention, but it is sufficient to say that in all of them there was either a direct obligation, which had not been fully discharged and which was not being performed, or there was an accepted franchise to supply all consumers of a certain locality and an omission to supply a portion thereof. Those cases *590 present a very different principle and have no application to the instant case.
It is contended on the other hand by the gas companies that the provisions of Section 504-3, General Code, apply only to utilities under a valid legal obligation to furnish product or service, where, by reason of failure of supply, unprofitable operation, or otherwise, the utility asserts a reason for discontinuing. The gas companies further argue that this section does not supersede all other legislation upon the subject, and that the commission does not by virtue of that section have power to decree when utilities shall serve, or whom they shall serve, or the terms and conditions of service and the rates to be charged therefor. We find it unnecessary to determine these questions, because they do not arise in the instant case.
It is sufficient to say that the statute confers the jurisdiction upon the commission to ascertain the facts, and make its findings thereon, and if the facts satisfy the commission that the proposed abandonment, withdrawal or closing is reasonable the application may be granted.
In this case its jurisdiction was invoked and the order was reasonable.-
We therefore find that the order, of the commission is not contrary to law, but that on the contrary it is both reasonable and lawful. Its order will therefore be affirmed.

Order affirmed.

Hough, Robinson, Jones and Matthias, JJ., concur.
Wanamaker, J., dissents.